IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATS ELECTRONICS, LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>FANNY WANG HEADPHONE COMPANY, INC., et al.,<br><br>    Defendants. | No. C-10-5680 MMC<br><br>**ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

Before the Court is plaintiff Beats Electronics, LLC's ("Beats") Application for Temporary Restraining Order, filed December 21, 2010 ("Application"); plaintiff Monster Cable Products, Inc. ("Monster") has filed a notice of joinder. Defendants HardCandy Cases LLC, dba Fanny Wang Headphone Company, erroneously sued herein as Fanny Wang Headphone Company, Inc., and Timothy W. Hickman (collectively, "Fanny Wang") have filed opposition, to which Beats has replied. The matter came on for hearing before the Court on January 3, 2011. Michael G. Kelber of Neal, Gerber & Eisenberg LLP and C. Todd Norris of Bullivant Houser Bailey PC appeared on behalf of Beats; Robert W. Payne and Christopher J. Passarelli of LaRiviere, Grubman & Payne, LLP appeared on behalf of Monster. Stuart J. West of West & Associates appeared on behalf of Fanny Wang. Having read and considered the parties' respective written submissions and the arguments

of counsel at the hearing, the Court rules as follows.

**LEGAL STANDARD/INJUNCTIVE RELIEF**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." See Winter v. Natural Res. Def. Council, 555 U.S. 7, 129 S. Ct. 365, 381 (2008). A party is entitled to a preliminary injunction only if such party demonstrates that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. See id. at 374.[1]

**DISCUSSION**

In its complaint, Beats alleges that Fanny Wang is advertising and selling on a website both "on ear" and "over ear" headphones, which activities assertedly infringe Beat's design patent, U.S. D552,077 S ("'077 Patent"), infringe Beat's trade dress, and are causing dilution of Beat's trade dress. (See Compl. ¶ 6, Ex. D.)[2] By the instant Application, Beats seeks an order enjoining Fanny Wang from using, shipping, selling, offering for sale, advertising, or promoting its headphones on its website and at a major trade show scheduled to begin January 6, 2011.

**A. Patent Infringement**

**1. Likelihood of Success on the Merits**

The '077 Patent includes two embodiments of the claimed design.[3] Each design comprises an expandable, foldable headband containing a yoke that together form a

---

[1] An application for a temporary restraining order must satisfy the same requirements. See New Motor Vehicle Board v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977).

[2] Fanny Wang has offered evidence, uncontroverted by Beats, that Fanny Wang has not manufactured an "over ear" headphone product, has not offered such a product for sale, and, indeed, has not, to date, even produced a prototype. (See Defs.' Opp. Ex. A17). Consequently, the Court's analysis herein concerns only the "on ear" model. See 35 U.S.C. § 217 (setting forth liability for patent infringement where party "makes, uses, offers to sell, or sells" patented invention); 15 U.S.C. § 1125(a) (precluding improper use of trade dress "in connection with any goods or services").

[3] The '077 Patent is attached as Exhibit C to the complaint, and as Exhibit 3 to the Declaration of Luis Lozada.

2

single, continuous piece, the headband being relatively wide and gradually and symmetrically transitioning at each end into a yoke shape, through which ear-cups are attached.  The Fanny Wang "on ear" headphones likewise comprise an expandable, foldable single-piece headband transitioning gradually to a yoke through which an ear-cup is connected.  Beats argues the two designs are substantially the same.  See Gorham Co. v. White, 81 U.S. 511, 526-27 (1871) (holding, for purposes of design patent infringement, test is one of "substantial identity").

"If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 670 (Fed. Cir. 2008) (internal quotation and citation omitted).  Such "ordinary observer" test is applied "through the eyes of an observer familiar with the prior art."  See id. at 677.

For purposes of the "ordinary observer" test, the Court finds the most relevant prior art offered by Fanny Wang consists of the Sennheiser HDR120 (see Defs.' Opp. Ex. C1) and two design patents (see id. Exs. A22, A23), each such prior art reference comprising a single-piece headband with an integrated yolk to which an ear-cup is attached.  What appears to distinguish the design claimed in the '077 Patent from the above-referenced prior art is that the transition from the headband to the yoke in the '077 patented design is symmetrical and more gradual.

### a.  '077 Patent: First Embodiment

Of the two embodiments of the claimed design, the embodiment that most closely resembles the design of the accused Fanny Wang product is the first embodiment, which is illustrated in Figures 1 through 7 of the '077 Patent.  In particular, there is a similarity in the shape of the headband of the patented design and the Fanny Wang design, including the portion encompassing the yoke, and the shape and size of the open portion of the yoke

//
//

are similar as well. (See '077 Patent, Fig. 5.)[4] As Fanny Wang points out, however, there are a number of differences between the patented design and the Fanny Wang design:

(a) the patented design includes a recessed flat surface at the location where the ear-cup engages the yoke, i.e., where the gimbal[5] meets the outer surface of the headband (see '077 Patent, Figs. 4, 5, 7), whereas the Fanny Wang design has no such recessed area;

(b) the ear-cup in the patented design sits at an approximately 45-degree angle in relation to the inner side of the headband (see '077 Patent, Fig. 2), whereas the ear-cup in the Fanny Wang design is parallel to the headband;

(c) the patented design includes visible screwheads at the four points at which the headband expands and the two points at which the headband folds (see '077 Patent, Fig. 1), whereas these features are absent from the Fanny Wang design;

(d) the patented design includes visible demarcations at the top of the headband at the two points where the headband folds (see id.), whereas this feature is absent from the Fanny Wang design;

(e) there is no indication of a patterned surface in the patented design (see '077 Patent, Figs. 1, 6), whereas the surface of the headband in the Fanny Wang design has a pattern consisting of repeated impressions of a stylized soundwave, creating a textured appearance; and

(f) there is an exposed portion of the gimbal, creating an appreciable space between the ear-cup and the inner surface of the headband in the patented design (see '077 Patent, Fig. 7), whereas this feature is absent from the Fanny Wang design.

---

[4]At the hearing conducted January 3, 2011, Fanny Wang provided the Court with a virtual line-up of mannequins wearing the following headphones: black, Fanny Wang "on ear" headphones; black, Beats "over ear" headphones; Beats "on ear" headphones, both in white and in black; and black headphones sold by two competing companies, Shure and Sly. Said exhibits will be returned to Fanny Wang to hold for the Court during the pendency of the action.

[5]At the hearing conducted January 3, 2011, the parties agreed upon the term "gimbal" for purposes of referring to the portion of the ear-cup that is inserted into the yoke.

### b. '077 Patent: Second Embodiment

The second embodiment of the patented design is illustrated in Figures 8 through 14 of the '077 Patent. With one exception, specifically, the absence of an appreciable space between the ear-cup and the inner surface of the headband, all of the above-described differences pertain, as well as the following additional distinctions:

(a) the point at which the headband widens to accommodate the yoke is, in the patented design, defined by a more acute angle than in the Fanny Wang design (see '077 Patent, Figs. 11, 12);[6] and

(b) the patented design includes a double ring surrounding the area where the gimbal engages the yoke (see '077 Patent, Figs. 8, 11, 12).

As Beats correctly notes, "minor differences" between a patented design and an accused article's design do not suffice to prevent a finding of infringement. See Crocs, Inc. v. International Trade Comm'n, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Here, however, on the present record, Beats has not shown the above-referenced differences between the patented design and the Fanny Wang design would not be sufficient to distinguish the two designs in the eyes of an ordinary observer familiar with the relevant prior art.

In sum, although Beats has shown it has a triable case, the Court finds Beats has failed, at this stage of the proceedings, to make a sufficient showing with respect to likelihood of success on its claim of patent infringement.

### 2. Remaining Factors

In the absence of a sufficient showing as to likelihood of success, Beats is not entitled to a presumption of irreparable injury. See Reebok Int'l Ltd. v. J. Baker, Inc., 32 F.3d 1552, 1556 (Fed. Cir. 1994) (holding "strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee"). Nor is the evidence on which Beats alternatively relies sufficient to

---

[6] Additionally, with respect to this particular feature, the second embodiment is closer in design to the above-referenced prior art than is the first embodiment. (See Defs.' Opp. Exs. A22, A23.)

5

1  demonstrate a likelihood of irreparable injury, in that such evidence is wholly conclusory in
2  nature. (See Paley Decl. ¶¶ 11-14.)[7]

### 3. Conclusion: Injunctive Relief Predicated on Patent Infringement

For the reasons stated above, the Court finds Beats, to the extent the Application is based on a claim of patent infringement, has failed to make the requisite "clear showing" that it is entitled to a preliminary injunction. See Winter, 129 S. Ct. at 381.

## B. Trade Dress Infringement

### 1. Likelihood of Success on the Merits

To establish a claim of trade dress infringement, a plaintiff must establish that (1) "the . . . design is nonfunctional," (2) "the design is inherently distinctive or acquired distinctiveness through secondary meaning," and (3) "there is a likelihood of confusion that the consuming public will confuse [the plaintiff's and the defendant's products]." See Disc Golf Ass'n v. Champion Discs, Inc., 158 F.3d 1002, 1005 (9th Cir. 1998).

For purposes of the instant Application, Beats focuses on the shape of its "on ear" Solo product and the shape of its "over ear" Studio product, as well as the colors used in both such products. (See, e.g., Pl.'s Appl. at 11:16-24.)

The first and second of the above three elements pertain to the protectability of the claimed trade dress. With respect to the first such element, and contrary to Fanny Wang's argument, the shape of the Beats headphones does not appear to be functional. For example, although, as Fanny Wang notes, the yoke may perform the function of encircling the ear-cup to prevent it from fully swiveling, there is no evidence to suggest the particular shape of the yoke bears any relationship to the performance of such function. In other words, it would appear the yoke could perform such function whether the yoke is designed as a circle, an oval or some other geometric shape. With respect to the second such element, a plaintiff, as noted, can make the requisite showing by demonstrating that its

---

[7] In light of the Court's findings with respect to the first and second factors, the Court does not address herein the third and fourth factors. See Reebok Int'l, 32 F.3d at 1556 (holding, "irrespective of relative or public harms, a movant must establish both a likelihood of success on the merits and irreparable injury").

1  trade dress either is "inherently distinctive" or has "acquired distinctiveness."  See Disc Golf
2  Ass'n, 158 F.3d at 1005.

3       Here, Beats contends it has shown inherent distinctiveness because "[t]he
4  combination of the continuous, uninterrupted profile, the circular yoke and the tri-fold
5  design, along with the color coordination, is unique to Beats and its licensee, Monster."
6  (See Pl.'s Appl. at 12:14-16.)  The Supreme Court has held, however, that where a claimed
7  trade dress consists of "product design" and/or "color," the plaintiff cannot rely on inherent
8  distinctiveness, but, rather, must show acquired distinctiveness by "secondary meaning."
9  See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 211, 211-15 (2000).

10       With respect to acquired distinctiveness, Beats submits evidence of its own
11  advertising, as well as various media reports, concerning its headphones.  The cited
12  advertisements and reports, however, do not focus primarily on the design and/or color of
13  the headphones, but, rather, on the manner in which the headphones function and/or on
14  various celebrities who use them.  (See Paley Decl. Ex. 9.)  Further, the colors used in the
15  Beats headphones, black or white with red accents, do not appear unique to Beats
16  products.  (See Lozada Decl. Ex. 5.)  Nor is there any showing that Beats has been the
17  only seller of headphones offering red cords.  Additionally, at least some of the other
18  headphones available for sale include a continuous, uninterrupted profile with a circular
19  yoke.  (See, e.g., Defs.' Exs. A1, B12, C1, C7.)  Finally, to the extent Beats relies on
20  evidence that third parties have sold "counterfeit Beats products" (see Hebron Decl. ¶¶ 10-
21  11), Beats has not shown such counterfeit products employ the claimed trade dress, as
22  opposed to, or in addition to, the Beats trademarks (see, e.g., Lozada Decl. Ex. 6
23  (identifying list of websites that sell "counterfeit" products, some of which include Beats
24  marks in URL, and showing counterfeit products with color schemes differing from that
25  used in genuine Beats products)).

26       In sum, on the record presented, the Court finds Beats has failed to make a
27  sufficient showing as to likelihood of success on its claim that its trade dress has acquired
28  secondary meaning.

Even assuming the claimed trade dress is protectable, however, the Court finds, as discussed below, that although Beats has shown it has a triable case, Beats has failed, at this stage of the proceedings, to make a sufficient showing as to likelihood of confusion, the third element of its trade dress infringement claim.

"Likelihood of confusion . . . is evaluated by reference to the same factors used in the ordinary trademark context: strength of the trade dress, similarity between plaintiff's and defendant's trade dress, evidence of actual confusion, marketing channels used, type of goods and likely degree of purchaser care, and the defendant's intent in selecting its trade dress." Vision Sports, Inc. v. Melville Corp., 888 F.2d 609, 616 (9th Cir. 1989).

Here, of particular significance, and as noted above, there exist a number of differences between the patented design and the Fanny Wang design; a substantial majority of those differences likewise exist between the Beats headphones and the Fanny Wang headphones, along with a number of additional differences. First, both the Beats "on ear," or Solo, headphones and the Beats "over ear," or Studio, headphones include prominently displayed trademarks, specifically, a red "b" on a silver disc at the head of the gimbal and the words "beats by dr. dre" at the top of each headband, whereas the Fanny Wang headphones include no similar marks at any location; rather, on the sides of the ear-cups, the accused headphones bear the mark "Fanny Wang." Second, both the Solo and Studio headphones have multiple red accents, whereas the Fanny Wang headphones, in addition to the mark "Fanny Wang," have only one red accent, located at the edge of each ear-cup. Third, on the Fanny Wang headphones, the portion of the headband prior to the yoke is wider at all points than on the Solo and Studio headphones.

In addition to the differences common to both Beats models, a comparison of the Solo to the Fanny Wang headphones reflects additional differences. Specifically, the overall impression presented by the Solo is that of a more slender and sleek device, whereas the Fanny Wang headphones have a heavier look; the black Solo has a matte

//

//

surface, whereas the Fanny Wang headphones have a high-gloss surface;[8] the underside of the Solo's headband is gray in color, whereas the black Fanny Wang headphones are uniformly black; and the head of the gimbal on the Solo is markedly larger than on the Fanny Wang headphones.

Although the Studio, like the Fanny Wang headphones, is heavier in overall appearance than the Solo and has a high-gloss finish, the Studio and Fanny Wang headphones, in addition to the earlier-noted differences, differ as follows:  (1) the Studio has a larger yoke than that of the Fanny Wang headphones, including a markedly larger opening; (2) a portion of the Studio's gimbal, large and red in color, is prominently exposed, a feature wholly absent from the Fanny Wang headphones; and (3) the Studio has silver metallic accents around the ear-cups, which feature is absent from the Fanny Wang headphones.

Next, there is no evidence of actual consumer confusion, and, to the extent any evidence as to confusion has been offered, the showing is to the contrary.  (See Lozada Decl. Ex. 4.)  Further, the record presently before the Court suggests the typical purchaser of the products at issue, given the relatively high price point, is sophisticated and knowledgeable about the field, and thus likely to exhibit care when making his/her selection.

Finally, with respect to the marketing channels used, Fanny Wang headphones, to date, are available for sale to the public exclusively on the Fanny Wang website, on which Fanny Wang plainly distinguishes its products from those sold by Beats and does so to such extent that no reasonable potential purchaser likely would be confused, either initially or at the end of a transaction, as to the source of the product.  (See id. Ex. 1.)[9]

---

[8] The white Solo has a high-gloss surface.

[9] Beats points out that the box in which the Fanny Wang headphones are sold uses the same colors as are used on the box in which the Beats headphones are sold. (See photographs, Reply at 11.)  As Fanny Wang notes, however, the parties' respective packaging differs, in that one half of its package is comprised of transparent material through which the headphones are clearly visible, whereas the Beats package is wholly non-transparent and prominently displays the Beats marks.

In sum, with respect to its claim of trade dress infringement, although Beats has shown it has a triable case, the Court finds Beats has failed, at this stage of the proceedings, to make a sufficient showing with respect to likelihood of success.

**2. Remaining Factors**

As with Beats' patent infringement claim, in the absence of a sufficient showing as to likelihood of success, Beats is not entitled to a presumption of irreparable injury, see Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1066 (9th Cir. 1999) (holding "irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim"), and, for the reasons discussed above in connection with the claim of patent infringement, Beats fails to otherwise establish a likelihood of irreparable injury.[10]

**3. Conclusion: Injunctive Relief Based on Trade Dress Infringement**

For the reasons stated above, the Court finds Beats, to the extent the Application is based on a claim of trade dress infringement, has failed to make the requisite "clear showing" that it is entitled to a preliminary injunction. See Winter, 129 S. Ct. at 381.

**C. Trade Dress Dilution**

To establish a claim of trade dress dilution, a plaintiff must show that (1) the trade dress is "famous and distinctive," (2) the defendant is "making use of the [trade dress] in commerce," (3) the defendant's "use began after the [trade dress] became famous," and (4) the defendant's use of the trade dress is "likely to cause dilution by blurring" or by "tarnishment." See Jade Toys, Inc. v. Mattel, Inc., 518 F.3d 628, 634 (9th Cir. 2008).

With respect to the second of the above elements, a plaintiff must show the trade dress alleged to cause dilution is "identical, or nearly identical, to the protected [trade dress]." See id. (internal quotation and citation omitted). Here, in light of the above-discussed findings with respect to the differences between the Beats headphones and the

---

[10]Again, in light of the Court's findings with respect to the first and second factors, the Court does not address herein the third and fourth factors. See Reebok Int'l, 32 F.3d at 1556.

1  Fanny Wang headphones, the Court finds Beats has failed, at this stage of the
2  proceedings, to make a sufficient showing as to likelihood of success on its dilution claim.
3       Accordingly, to the extent the Application is based on a claim of trade dress dilution,
4  Beats has failed to make the requisite "clear showing" that it is entitled to a preliminary
5  injunction.  See Winter, 129 S. Ct. at 381.

## CONCLUSION

For the reasons stated above, Beat's Application is hereby DENIED.

**IT IS SO ORDERED.**

Dated:  January 5, 2011

MAXINE M. CHESNEY
United States District Judge

11